**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANA CONFERE, III, | ) | Case No. 5:24-CV-02184-JRA |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| WARDEN, MICHAEL DeMARTINO, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.  INTRODUCTION

Petitioner, Dana Confere, III ("Mr. Confere"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Confere was sentenced to a term of 14 to 18 years in prison after pleading guilty to two counts of felonious assault.

Mr. Confere asserts four grounds for relief. Respondent, Warden Michael DeMartino ("Warden"), filed an answer/return of writ on April 18, 2025. (ECF No. 9). Mr. Confere filed a traverse on May 16, 2025. (ECF No. 10). The Warden filed a reply to Mr. Confere's traverse on May 21, 2025. (ECF No. 11).

This matter was referred to me on January 2, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Confere's petition. (*See* ECF non-document entry dated January 2, 2025). For the reasons set forth below, I recommend that Mr. Confere's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Confere a certificate of appealability.

## II.  RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings

1

of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Ninth Appellate District summarized the facts as follows:

{¶2} Mr. Confere assaulted R.A., his 36-week pregnant live-in girlfriend, and R.A.'s unborn child. R.A. barely survived the assault and her child died. The Summit County Medical Examiner determined the child died when R.A.'s placenta abrupted and separated from her uterine wall as a result of the assault. During a forensic examination by Jane Bryan, a SANE nurse, R.A. described her relationship with Mr. Confere, and details of the attack, as follows:

It started off as a rough day for [Mr. Confere] because he didn't have any cigarettes and he was saying things like he felt like I didn't put anything forth with the relationship. [Mr. Confere] thought I was lazy because he said that I didn't do enough around the house. But to be specific [Mr. Confere] was screaming at me because he wanted me to put the pizza in the stove for both of us. I said, "Sorry I wasn't trying to put it off on you." But he wasn't listening, he didn't care what I had to say. That's when he started attacking the tables with a bar. It was a black bar with a sharp end on it. I got really scared because this was one of the [worst] freak outs that I've seen. [Mr. Confere] started threatening me saying, "I'm actually going to really beat you. If you can't help me then you're going to pay for it." When he experiences these episodes he'll tell me to leave the room but then when I go to walk into the other room he gets me to where I can't walk away. He grabs me by my hair. He definitely knows how to make it to where I don't leave the room. Over the course of our relationship there were times when he hurt me so bad that I thought my life would never be good again. I felt hopeless, I wanted it to stop. I wanted him to get help. I've told him before that I want him to get help for his explosive intermittent disorder and that I did some research and learned that people with this disorder can get better after two months of group counseling but he said, "I'm not going to change for anybody. You have to accept the way I am." When he was attacking the tables with the bar he was breaking the glass and flipping them over. Here's the weird thing, I don't remember getting off the floor. He kept saying, "Get up, [R.A.]. Get up, [R.A.]. I'm really worried and I don't know what to do." Then he called his work buddy, [T.J.] and said, "Please come here, I need your help." I was paralyzed on the ground but I could [hear] him saying, "She's not getting up [.] I'm worried about my daughter. I'm worried about [R.A.]." I remember lying on the floor and not being able to open my eyes. * * * When this all started and he began his freak out, I tried to leave at first but he yanked me by my hair and back into the

room and said, "You're not going anywhere." He continued to verbally assault me. He ripped me all over the house by my hair. Some of the time and intervals are hazy a little bit. I remember him hitting me after he broke the tables. He hit me on the right side of my face. Right before I fell on the floor paralyzed is when he kicked me in the stomach. I never fell down the stairs. I lied to protect him. I was so startled when he kicked me in the stomach and I remember making a noise and that's all I remember about that. He stood in front of me and kicked me in the stomach. I fell to the ground paralyzed and I couldn't move. * * * Once he kicked me and saw me fall, he quit. Before I fell I was standing at the front door and he put his hands around my neck and strangled me.

R.A. indicated her entire body was in "excruciating pain," and that her abdominal pain was 10/10 at the time of the assault. R.A. further indicated, "[a]fter [Mr. Confere] kicked me in the stomach I knew something was terribly wrong because I had pain in my vagina." R.A. feared Mr. Confere upon discharge from the hospital and stated, "[i]f he's in jail then I'm not afraid."[1]

(ECF No. 9-1, Exhibit 22); *State v. Confere*, No. 30560, 2023 WL 5949443, 2023-Ohio-3233 (9th Dist. Sept. 13, 2023).

## III. PROCEDURAL HISTORY

### A. State Court Guilty Plea

On February 6, 2020, Mr. Confere was indicted in the Summit County Court of Common Pleas on: (1) two second-degree felony counts of felonious assault in violation of O.R.C. §§ 2903.11(A)(1) and 2903.11(D)(1)(a); (2) one first-degree felony count of involuntary manslaughter in violation of O.R.C. §§ 2903.04(A) and 2903.04(C); (3) one fourth-degree felony count of domestic violence in violation of O.R.C. §§ 2919.25(A) and 2919.25(D)(3); and (4) one fifth-degree felony count of domestic violence in violation of O.R.C. §§ 2919.25(A) and 2919.25(D)(5). (ECF No. 9-1, Exhibit 1). On February 19, 2020, Mr. Confere pled not guilty to all charges. (ECF No. 9-1, Exhibit 3).

On February 20, 2020, the grant jury issued a supplemental indictment charging Mr.

[1] R.A. later attempted to recant her statement that Mr. Confere kicked her in the stomach and spoke in his favor at sentencing.

3

Confere with one first-degree misdemeanor count of violating a protective order in violation of O.R.C. §§ 2919.27(A)(1) and 2919.27(B)(2). (ECF No. 9-1. Exhibit 2). On February 26, 2020, Mr. Confere pled not guilty to the supplemental charge. (ECF No. 9-1, Exhibit 4). The trial court also entered an order prohibiting Mr. Confere from having any contact with the alleged victim. *Id*. On April 1, 2020, the grand jury issued a second supplemental indictment, charging Mr. Confere with one unspecified-felony count of murder in violation of O.R.C. §§ 2903.02(A), 2903.02(D), and 2929.02(B). (ECF No. 9-1, Exhibit 5). On April 8, 2020, Mr. Confere pled not guilty to the supplemental charge. (ECF No. 9-1, Exhibit 6).

On February 1, 2022, Mr. Confere filed a motion for an evaluation of his competence to stand trial and a request for a sanity evaluation. (ECF No. 9-1, Exhibits 7-8). On February 2, 2022, the trial court granted both motions. (ECF No. 9-1, Exhibit 9).

On October 26, 2022, Mr. Confere withdrew his plea of not guilty and pled guilty to two second-degree felony counts of felonious assault. (ECF No. 9-1, Exhibit 10). In return, the State agreed to dismiss the remaining charges. *Id*.

Prior to sentencing, counsel for Mr. Confere submitted multiple sentencing memoranda. On November 15, 2022, one of Mr. Confere's attorneys submitted a memorandum asking the court to impose a sentence of no more than three years. (ECF No. 9-1, Exhibit 11). On the same day, another one of his attorneys submitted a memorandum that did not request a specific sentence but that raised certain aspects of Mr. Confere's background and circumstances for the court's attention. (ECF No. 9-1, Exhibit 12). On November 17, 2022, counsel submitted an amended memorandum, again asking the court to impose an aggregate sentence of no more than three years. (ECF No. 9-1, Exhibit 13). On November 28, 2022, the trial court sentenced Mr. Confere to an aggregate term of 14 to 18 years. (ECF No.

9-1, Exhibit 14).

**B. <u>Direct Appeal</u>**

On January 4, 2023, Mr. Confere, through new appellate counsel, filed a notice of appeal to the Ninth Appellate District. (ECF No. 9-1, Exhibit 15). Mr. Confere also filed a motion for leave to file a delayed appeal, which the Ninth Appellate District granted on January 27, 2023. (ECF No. 9-1, Exhibits 16-17). On April 30, 2023, Mr. Confere filed his appellate brief, raising the following assignment of error:

1.   The trial court abused its discretion when imposing sentence on appellant.

(ECF No. 9-1, Exhibit 18).

On September 13, 2023, the Ninth Appellate District affirmed. (ECF No. 9-1, Exhibit 22). Mr. Confere did not appeal the Ninth Appellate District's decision to the Ohio Supreme Court.

**C. <u>Motion for Modification of Sentence</u>**

On March 22, 2024, Mr. Confere, acting *pro se*, filed a postconviction motion in the trial court for modification of his sentence, asking the court to reduce his sentence and to run his sentences concurrently. (ECF No. 9-1, Exhibit 23). Mr. Confere argued that modification was warranted because: (1) he suffers from intermittent explosive disorder (IED), bipolar disorder, depression, and post-traumatic stress disorder (PTSD); (2) he was under the influence of methamphetamines at the time of the crime; (3) he had no prior felony criminal history; (4) the victim, R.A., recanted many of her accusations against him and submitted a statement that Mr. Confere did not cause her hospitalization or the death of the unborn child; (5) he received the ineffective assistance of trial counsel; (6) he received a longer sentence than other individuals who committed similar offenses; (7) he wished to pursue rehabilitation; and (8) he had a home plan upon release.

5

On April 23, 2024, the trial court denied Mr. Confere's motion. (ECF No. 9-1, Exhibit 24). On September 6, 2024, Mr. Confere, acting *pro se*, filed a notice of appeal to the Ninth Appellate District, raising a single assignment of error:

> 1. The trial court abused its discretion in denying appellant's petition for post conviction relief.

ECF No. 9-1, Exhibit 25).

On September 18, 2024, the State moved to dismiss Mr. Confere's appeal as untimely. (ECF No. 9-1, Exhibit 26). On September 20, 2024, the Ninth Appellate District dismissed the appeal, holding that it was without jurisdiction over the appeal because Mr. Confere did not timely file his notice of appeal. (ECF No. 9-1. Exhibit 27).

On October 29, 2024, Mr. Confere filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 28). In his memorandum in support of jurisdiction, Mr. Confere argued that his trial counsel was constitutionally ineffective and that the trial court should have imposed a shorter sentence. (ECF No. 9-1, Exhibit 29). On November 26, 2024, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 9-1, Exhibit 31).

### D. **Federal Habeas Action**

On December 9, 2024, Mr. Confere, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Confere's habeas petition raises the following grounds for relief:

> 1. Mental health and substance abuse issues.
>
> <u>Supporting Facts</u>: Mr. Confere suffers from Bipolar and Intermittent Explosive Disorder (IED), which are impulse-centered disorders. Without treatment, they cause little to no control over actions during episodes. They are caused by being exposed to a traumatic environment, especially at a young age, and by biological factors. Biologically, these illnesses are caused by chemical imbalances in the brain and differences in the brain structure compared to a normal brain structure. These illnesses can also be passed down genetically. They make it hard to process emotions normally, which causes anger/irritability on heightened levels . . . (Continued on State Motion).

2. Statement from the victim.

Supporting Facts: This is a statement from the victim in this case. We will refer to her as R.A. "Dana did not cause my hospitalization and didn't cause severe harm or death of my baby, but he still committed minor domestic violence against me. I didn't need medical treatment after he committed domestic violence towards me, but after I fell from the stairs I had to go to the hospital. Not all my injuries were from him. Dana had unmedicated mental illness at the time of the incident. He had psychosis, irritability, and he blacked out. He thought I was going to hurt him and cried out for me to help him. I instigated him by getting in his face and yelling at him, trying to get him to come back to reality . . . The medical and photographic evidence did not prove the State's accusations, except for a certain degree of domestic violence, not severe harm committed by Dana . . ." (Continued on State Motion).

3. Ineffective counsel.

Supporting Facts: Counsel failed to bring up that Mr. Confere self-medicated with a small amount of methamphetamine that could of caused a negative reaction with his mental illnesses during the time of his crime. Counsel also failed to bring up accurate mental health issues that Mr. Confere suffers from. The judge wasn't told about Mr. Confere's IED and bipolar disorder. Counsel didn't discuss the defense expert's report as much as they should have. Counsel failed to bring up that the medical records stated that the unborn child had no injuries, but had nuchal cord issue. (Continued on State Motion).

4. Disparity in sentencing, home plan, rehabilitation, and aberrant behavior.

Supporting Facts: The State and its witnesses accused Mr. Confere of causing severe harm to R.A. and her unborn child by placental abruption. However, R.A.'s medical records stated that the unborn child had no injuries and no abnormalities (unremarkable), but that the fetus experienced a potentially fatal, "naturally occurring" medical condition called nuchal cord strangulation, in which the cord was wrapped around the fetus's neck in R.A.'s womb. In addition, the defense's medical expert did a complete forensic exam/autopsy of the unborn child and exam of the medical records and found with great certainty that R.A. didn't experience placental abruption, and agreed that the fetus was harmed by nuchal cord strangulation . . . (Continued on Additional info page and State Motion).

*Id*. The Warden filed an answer/return of writ on April 18, 2025. (ECF No. 9). Mr.

Confere filed a traverse on May 16, 2025. (ECF No. 10). The Warden filed a reply to Mr.

Confere's traverse on May 21, 2025. (ECF No. 11).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. **Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Summit County Court of Common Pleas sentenced Mr. Confere, and the Court takes judicial notice that Summit County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Confere's § 2254 petition.

### B. **Exhaustion and Procedural Default**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is

8

clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

9

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine

10

of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  AEDPA Standard of Review

AEDPA provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes

only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court

relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

Mr. Confere asserts four grounds for relief. In three of those grounds (Grounds One, Two, and Four), he argues that the trial court should have imposed a more lenient sentence in light of mitigating factors or evidence undercutting the State's version of events. In Ground Three, Mr. Confere argues that he received the ineffective assistance of counsel during the sentencing phase. I will address Mr. Confere's ineffective assistance claim first before turning to his sentencing-based claims.

### A. Ground Three: Ineffective Assistance of Trial Counsel

Mr. Confere asserts that he received the ineffective assistance of trial counsel because his counsel failed to make, or to advance with sufficient vigor, various arguments at sentencing. He also argues that his counsel filed multiple, inconsistent sentencing memoranda. The Warden argues that Mr. Confere procedurally defaulted on this claim. I agree. I also conclude that Mr. Confere's claim fails on the merits.

#### 1. *Procedural Default*

As noted above, a petitioner procedurally defaults on a claim where the petitioner fails to comply with a state court procedural rule that prevents the state court from reaching the merits of the petitioner's claim. *Williams*, 460 F.3d at 806. As the Warden correctly argues,

13

Mr. Confere procedurally defaulted on his ineffective assistance claim by failing to comply with Ohio's procedural rule governing the deadline for filing appeals.

Mr. Confere first raised his ineffective assistance of trial counsel claim in his postconviction motion to reduce his sentence. (ECF No. 9-1, Exhibit 23). The trial court denied that motion on April 22, 2024. (ECF No. 9-1, Exhibit 24). Under Ohio Rule of Appellate Procedure 4(A)(1), Mr. Confere had 30 days, or until May 22, 2024, to file a notice of appeal to the Ninth Appellate District. *See* Ohio R. App. P. 4(A)(1). However, Mr. Confere did not file his appeal until September 6, 2024, more than three months later. (ECF No. 9-1, Exhibit 25). The Ninth Appellate District enforced the procedural bar when it dismissed Mr. Confere's appeal as untimely. (ECF No. 9-1, Exhibit 27). The Ohio Supreme Court then declined to accept jurisdiction without comment, leaving the Ninth Appellate District's ruling as the last explained state court judgment on the issue. *See Ylst*, 501 U.S. at 805.

It is well-settled that a state court's rejection of an appeal as untimely is an adequate and independent ground that results in a procedural default under *Maupin*. *See Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 219 (6th Cir. 2019) ("denying a postconviction motion or appeal based on untimeliness is an independent and adequate state procedural ground.") (citing cases). Mr. Confere thus procedurally defaulted on his first, second, and fourth grounds for relief by failing to comply with Ohio's appellate deadlines.

Mr. Confere's procedural default can be excused if he demonstrates either cause and prejudice or that failure to consider his claim on the merits would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. In his traverse, Mr. Confere argues that he failed to timely appeal the trial court's denial of his postconviction motion because he was acting *pro se* during the postconviction process. However, it is well-settled that a prisoner's

*pro se* status or ignorance of the law does not constitute "cause" to excuse a procedural default. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse [a] procedural default"); *Garcia v. Eppinger*, No. 1:17CV1090, 2020 WL 3037090, at *16 (N.D. Ohio May 11, 2020) ("a prisoner's pro se status and ignorance of the law do not constitute adequate cause to excuse a procedural default."), *report and recommendation adopted*, 2020 WL 3036028 (N.D. Ohio June 5 2020).

Mr. Confere also argues that his procedural default should be excused due to ineffective assistance of counsel because a paralegal misadvised him regarding the deadline to file an appeal. Ineffective assistance of counsel can, in certain circumstances, constitute cause to excuse a procedural default. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). However, "[i]neffective assistance of counsel may constitute cause for a procedural default only where a petitioner has a Sixth Amendment right to counsel," and "[t]he right to counsel extends to the first appeal of right but not to discretionary appeals or post-conviction collateral proceedings." *Balducci v. Foley*, No. 1:22-CV-00299-JRK, 2024 WL 4695906, at *18 (N.D. Ohio Nov. 6, 2024) (citing *Coleman*, 501 U.S. at 752; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)), *report and recommendation adopted*, 2025 WL 653458 (N.D. Ohio Feb. 28, 2025).

Notwithstanding that general rule, Mr. Confere argues that he had a right to counsel in connection with his postconviction motion under two Supreme Court decisions, *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). In *Martinez*, the Supreme Court recognized a "narrow exception" to *Coleman*'s general rule that a defendant has no constitutional right to counsel in postconviction proceedings. 566 U.S. at 9. Under that

15

exception "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. at 17. In *Trevino*, the Court expanded *Martinez*'s scope, holding that *Martinez* also applies where a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." 569 U.S. at 429.

The application of *Martinez* and *Trevino* to Ohio's ineffective assistance regime is not entirely clear. Ohio has a "dual-track system" for ineffective assistance of counsel claims. *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016); *see also McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013). Under that system, grounds for relief that are based on evidence wholly within the trial record must be brought on direct appeal, while claims based on evidence outside the trial record cannot be brought on direct review and must instead be raised in a petition for state post-conviction relief. *McGuire*, 738 F.3d at 751 (citing *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169, 171 (1982)).

The Sixth Circuit "ha[s] not yet decided" whether *Martinez* and *Trevino* apply to Ohio's dual-track system. *Mammone v. Jenkins*, 49 F.4th 1026, 1048 (6th Cir. 2022). I likewise need not resolve that question here, as *Martinez* and *Trevino* cannot apply unless the petitioner's ineffective assistance of trial counsel claim is "substantial." *Martinez*, 566 U.S. at 16; *Mammone*, 49 F.4th at 1048-49. As set forth below, Mr. Confere's ineffective assistance of trial counsel claim is not substantial. Thus, regardless of whether *Martinez* and

16

*Trevino* could apply in theory, they do not apply under the circumstances presented here. I therefore recommend that the Court dismiss Mr. Confere's third ground for relief as procedurally defaulted.

### 2.  Merits

Alternatively, I recommend that the Court deny Mr. Confere's third ground for relief on the merits because he has not shown that he received the ineffective assistance of trial counsel or that any alleged ineffectiveness prejudiced him.

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The right to effective assistance of counsel "extends to all critical stages of a criminal proceeding," including the plea bargain phase. *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019) (citing *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).

Under the first prong of *Strickland*, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* standard is "extremely deferential." *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting

17

*Strickland*, 466 U.S. at 687).

Mr. Confere argues that his counsel was ineffective at sentencing in a number of respects, including: (1) not arguing that Mr. Confere was under the influence of methamphetamine at the time of the incident; (2) failing to raise Mr. Confere's mental health issues; (3) not sufficiently relying on a report from a defense expert stating that the unborn child died from nuchal cord strangulation rather than a placental abruption and that Mr. Confere's attack did not cause the child's death; (4) not raising the victim's recantation of her initial statement to the police; (5) not requesting inpatient treatment; and (6) submitting multiple, conflicting sentencing memoranda.

Mr. Confere's claim fails on both *Strickland* prongs.[2] Beginning with the performance prong, the transcript of the sentencing hearing belies Mr. Confere's argument that his counsel failed to make, or to adequately press home, arguments in favor of a more lenient sentence. For example, while Mr. Confere asserts that his counsel did not raise Mr. Confere's intermittent explosive disorder or bipolar disorder, counsel specifically informed the trial court that Mr. Confere has a history of mental health issues and requested that Mr. Confere undergo a mental health evaluation and receive treatment. (ECF No. 9-3, 37:8-38:9; 41:11-42:7). Similarly, despite Mr. Confere's assertion to the contrary, counsel also expressly requested that the court place Mr. Confere in a residential treatment facility. *Id*. at 42:22-43:7. Counsel further argued that Mr. Confere had a limited prior criminal history with no prior felonies. *Id*. at 36:12-25. Finally, counsel challenged the State's version of events, informing

---

[2] Citing *Tollett v. Henderson*, 411 U.S. 258 (1973), the Warden argues that Mr. Confere has waived any ineffective assistance of counsel arguments to the extent he bases his claim on alleged ineffectiveness predating the plea. While the Warden is right regarding the legal principle, *see id*. at 267, Mr. Confere does not appear to be asserting any claims based on counsel's pre-plea performance. Instead, his arguments relate to counsel's failure to make or sufficiently pursue certain arguments at sentencing.

the court that the defense's expert concluded that the unborn child did not die of a placental abruption and that the child may have instead died from umbilical cord strangulation. *Id*. at 33:1-35:8.

In sum, based on my review of the transcript, counsel zealously advocated for Mr. Confere during the sentencing hearing, raising a number of potential mitigating factors and evidentiary disputes, including many of the arguments that Mr. Confere faults his counsel for not raising. Mr. Confere has not shown that his counsel's performance at the hearing fell below an objective standard of reasonableness. Nor has Mr. Confere shown that counsel rendered constitutionally inadequate assistance simply because counsel submitted multiple sentencing memoranda that Mr. Confere alleges contained conflicting information.

Mr. Confere also cannot demonstrate prejudice. In addition to counsel's argument at the sentencing hearing, Mr. Confere himself engaged in an extended colloquy with the trial court. During that exchange, Mr. Confere and the trial judge discussed his mental health issues (ECF No. 9-3, 51:19-57:17), the fact that he was under the influence of marijuana and methamphetamine at the time of the incident (*id*. at 58:20-59:7), and the report from Mr. Confere's expert indicating that he did not cause the unborn child's death (*id*. at 68:13-70:5). The trial court also heard from the victim herself, who told the court that she lied in her initial statement to the police and that Mr. Confere assaulted her but did not kick her in the abdomen. *Id*. at 21:3-22:7. The victim further told the trial court that Mr. Confere did not cause the death of the unborn child and that he had been excited for her birth. *Id*. at 21:3-22:7; 29:5-15.

Despite hearing additional statements from Mr. Confere and the victim regarding the topics that Mr. Confere believes his counsel should have raised or advanced more forcefully, the trial court sentenced Mr. Confere to a term of 14 to 18 years. There is no reason to think

that additional argument from counsel on those issues would have produced a different result. Nor is there any reason to think that Mr. Confere would have received a more lenient sentence had his trial counsel not submitted multiple sentencing memoranda. Mr. Confere has not satisfied either prong of *Strickland*, and I alternatively recommend that the Court deny his third ground for relief on the merits.

### B.  Grounds One, Two, and Four

In his first, second, and fourth grounds for relief, Mr. Confere asserts that the trial court should have imposed a shorter sentence in light of various mitigating factors and evidence that he believes undercuts the State's version of events. In Ground One, Mr. Confere argues that he suffers from mental health issues that inhibit his ability to control his impulses. In Ground Two, Mr. Confere argues that the victim submitted a statement averring that Mr. Confere was not responsible for most of her injuries and did not cause the death of her unborn child. In Ground Four, Mr. Confere raises several arguments, including that: his behavior was aberrant; he received a longer sentence than other offenders who committed similar crimes; he hopes to rehabilitate; and he has a home plan on release. The Warden responds that Mr. Confere procedurally defaulted on all three claims and that his claims are not cognizable in a

federal habeas proceeding. I agree with the Warden on both arguments.[3]

### 1. Procedural Default

As with his ineffective assistance of counsel claim, Mr. Confere procedurally defaulted on Grounds One, Two, and Four because he did not timely appeal the trial court's order denying his motion to reduce his sentence, and because the Ninth Appellate District enforced the procedural bar when it dismissed his appeal. *See* ECF No. 9-1, Exhibits 25, 27; *Smith*, 780 F. App'x at 219.

Mr. Confere also procedurally defaulted on these claims because he did not fairly present them to the Ohio courts. "To determine whether a petitioner has fairly presented a claim in state court, [a court] ask[s] whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017). "While a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of the

---

[3] Mr. Confere raised a portion of his fourth ground for relief in his direct appeal to the Ninth Appellate District, arguing that his actions constituted aberrant behavior. (ECF No. 9-1, Exhibit 18). Mr. Confere failed to appeal the Ninth Appellate District's decision affirming the trial court to the Ohio Supreme Court. While the deadline for him to do so has long since expired, Rule 7.01(A)(4) of the Ohio Supreme Court Rules of Practice provides that an appellant in a felony case may file a motion for a delayed appeal when the appellate deadline has expired. *See* Ohio S. Ct. Prac. R. 7.01(A)(4). Mr. Confere thus has a potential avenue to raise the claim before the Ohio Supreme Court, which raises the possibility that his claim is unexhausted. § 2254(c) provides that a claim is not exhausted if the petitioner has "the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c); *see also Brown v. Warden, Lake Erie Corr. Inst.*, No. 1:11cv2765, 2014 WL 132367, at *11 (N.D. Ohio Jan. 14, 2014) ("Courts in this District have held that a petitioner's federal habeas claims are not exhausted where he may yet file a motion for delayed appeal in the Supreme Court of Ohio and, therefore, has a potential remaining state avenue of relief."). In *O'Sullivan*, however, the Court held that § 2254(c) does not "requir[e] a state prisoner to invoke *any possible* avenue of state court review . . . ." 526 U.S. at 844. Rather, a petitioner must only give the state courts "one full opportunity" to resolve any constitutional issue by invoking a "complete round" of the state's appellate review process. *Id*. at 845. Mr. Confere raised his fourth ground for relief in his postconviction motion, which he appealed up to the Ohio Supreme Court, giving the state courts one full opportunity to review his claim. He has thus exhausted his fourth ground for relief even though another potential mechanism remains open to him under Ohio law.

denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)).

During the state court proceedings, Mr. Confere argued his first, second, and fourth grounds for relief as questions of state law, not federal constitutional claims. He did not rely on state or federal cases employing a federal constitutional analysis, did not phrase his claims in terms of constitutional law, and did not allege any facts within the mainstream of federal constitutional law. Instead, he argued that the trial court should have given him a shorter sentence under Ohio's sentencing rules. (ECF No. 9-1, Exhibits 23, 25, 29). Because Mr. Confere did not present his claims to the Ohio courts as issues of federal constitutional law, he has procedurally defaulted on them. *See Hand*, 871 F.3d at 418.

Mr. Confere has also again failed to establish cause and prejudice to excuse his procedural default. As discussed above, his *pro se* status does not constitute cause. *Bonilla*, 370 F.3d at 498; *Garcia*, 2020 WL 3037090, at *16. Moreover, the *Martinez* exception cannot save Mr. Confere's claims because that exception applies only to claims for ineffective assistance of trial counsel. *See Davila v. Davis*, 582 U.S. 521, 524-25 (2017) (holding that *Martinez* applies to "a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal"); *Hale v. Shoop*, No. 1:18-cv-504, 2021 WL 1215793, at *98 (N.D. Ohio Mar. 31, 2021) ("*Martinez* and *Trevino*'s equitable exception allowing the ineffective assistance of post-conviction counsel to constitute cause for procedural default applies only to claims of ineffective assistance of trial counsel; it does not apply to any other claims . . . ."). I therefore recommend that the Court dismiss Mr.

Confere's first three grounds for relief as procedurally defaulted.

### 2. Cognizability

Alternatively, I recommend that the Court dismiss Grounds One, Two, and Four because they are not cognizable. As noted above, "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67. Rather, "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). Accordingly, "[c]ourts have consistently held that a habeas petitioner cannot challenge the interpretation and application of Ohio's sentencing laws because 'a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action.'" *Fritz v. Fender*, No. 1:23 CV 00221, 2023 WL 7474054, at *1 (N.D. Ohio Oct. 23, 2023) (citing *Croce v. Miller*, No. 1:15-CV-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017)); *see also Taeusch v. Sloan*, No. 1:19-cv-282, 2022 WL 409266, at *3 (N.D. Ohio Feb. 10, 2022) (holding that a "legal challenge relating to mitigating factors for sentencing under Ohio law" is not cognizable on habeas review).

In Grounds One, Two, and Four, Mr. Confere argues that the trial court should have imposed a more lenient sentence because he did not cause most of the victim's injuries or the death of the unborn child, and because Mr. Confere believes a number of mitigating factors are present. Those arguments go directly to the Ohio courts' interpretation and application of Ohio's sentencing laws, and are not cognizable in this proceeding.

Mr. Confere contends that his sentencing arguments raise a federal constitutional question because 18 U.S.C. § 3553 sets out certain factors that a court must consider when imposing a sentence. However, § 3553 is a federal statute governing sentences imposed on defendants convicted of federal crimes. *See* 18 U.S.C. § 3551(a) ("Except as otherwise

specifically provided, a defendant who has been found guilty of an offense *described in any Federal statute* . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2)") (emphasis added). Mr. Confere was not convicted of any federal crimes, and § 3553 has no application to his sentence. Accordingly, his first, second, and fourth grounds for relief do not raise any federal constitutional claims, and I alternatively recommend that the Court dismiss them as non-cognizable.[4]

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires

---

[4] In his traverse, Mr. Confere requests that the Court hold an evidentiary hearing. Under § 2254(e)(2), if the petitioner has failed to develop the factual basis for the claim in state court, the court may hold an evidentiary hearing only in limited circumstances, including where the factual predicate of the claim could not have been previously discovered with due diligence. *See*  28 U.S.C. § 2254(e)(2). "When deciding whether to grant an evidentiary hearing, a court must consider whether such a hearing could enable the habeas petitioner to prove the habeas petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims." *Newton v. Turner*, No. 1:20-cv-2799, 2024 WL 1853042, at *4 (N.D. Ohio Apr. 29, 2024) (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Because Mr. Confere's claims are procedurally defaulted and without merit, an evidentiary hearing would not enable him to prove claims entitling him to relief. Accordingly, I recommend that the Court not grant Mr. Confere an evidentiary hearing.

24

the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].")." In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  Analysis**

Mr. Confere has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

# VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Confere's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated:  September 5, 2025                    _/s/ Jennifer Dowdell Armstrong_
                                             Jennifer Dowdell Armstrong
                                             U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

_Id._ (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. _Berkshire v. Dahl_, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. _Howard v. Sec'y of Health and Hum. Servs._, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).